# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### FORT MYERS DIVISION

RONALD WILLIS,

      Plaintiff,

v.                                Case No:  2:15-cv-245-FtM-CM

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

---

## OPINION AND ORDER

Plaintiff Ronald Willis appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner" or "Administration") denying his claim for Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI").  Because the decision of the Commissioner is supported by substantial evidence, and the Plaintiff has not shown any reversible error, the decision will be affirmed.

## I.    Issues on Appeal[1]

Plaintiff raises two inter-related issues on appeal (1) whether the Administrative Law Judge ("ALJ") improperly substituted his opinion for that of the medical experts with respect to Plaintiff's mental impairments in assessing his

---

[1] Any issue not raised by Plaintiff on appeal is deemed to be waived. *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ([A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed."), *cited in Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 n.1 (11th Cir. 2013).

residual functional capacity ("RFC"); and (2) whether the ALJ erred in applying the Medical Vocational Guidelines (the "Grids") to determine that Plaintiff could perform work that exists in significant numbers in the national economy, alleging Plaintiff had severe non-exertional limitations from such mental impairments.

## II.   Procedural History and Summary of the ALJ Decision

Plaintiff filed applications for DIB and SSI alleging he became unable to work on April 1, 2007. Tr. 61-62, 110-18. The Administration initially denied his claim on March 16, 2011 (Tr. 75-83), and upon reconsideration on April 25, 2011. Tr. 85-90. On May 4, 2011, Plaintiff requested a hearing, and on June 18, 2012 a hearing before an ALJ was granted. Tr. 91-109. This hearing was held on September 18, 2012 in Fort Myers, Florida, before ALJ Larry J. Butler, during which Plaintiff testified and was represented by an attorney. Tr. 31-60.

On November 1, 2013, the ALJ issued an unfavorable decision and denied Plaintiff's claim. Tr. 9-23. The ALJ first determined that Plaintiff met the insured status requirements for the Social Security Act on December 31, 2012. Tr. 14. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 1, 2007, the alleged onset date. *Id.* At step two, the ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, chronic back pain, left leg atrophy and foot drop, history of left shoulder pain and surgery, and spine stimulator implant. *Id.* At step three, the ALJ concluded that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part

404, Subpart P, Appendix 1." Tr. 16.

The ALJ next determined that Plaintiff had the RFC to perform the full range of sedentary work[2] as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), and further that Plaintiff was able to lift/carry a maximum of ten pounds, stand/walk for two hours in an eight-hour workday, and sit for six hours in an eight-hour workday. Tr. 17. In making this determination, the ALJ found that although Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible…" Tr. 18. The ALJ next found that Plaintiff was unable to perform any past relevant work as the owner of an exotic pet store, but found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. Tr. 19, 22. Thus, the ALJ found that Plaintiff is not disabled and denied his claim. Tr. 23.

Following the ALJ's decision, Plaintiff filed a request for review with the Appeals Council, which was denied on February 11, 2015. Tr. 1-5, 8. Accordingly the ALJ's November 1, 2013 decision is the final decision of the Commissioner. Plaintiff

---

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. 404.1567(a). Social Security Ruling 83-10 elaborates on § 404.1567(a) by providing that "'occasionally' means occurring from very little up to one-third of the time," and that "periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday." *Kelley v. Apfel*, 185 F.3d 1211, 1214 n.2 (11th Cir. 1999).

filed a timely appeal in this Court.  Doc. 1.

### III.   Social Security Act Eligibility and Standard of Review

A claimant is entitled to disability benefits when he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or last for a continuous period of not less than twelve months.  42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505(a).  The Commissioner has established a five-step sequential analysis for evaluating a claim of disability.  *See* 20 C.F.R. § 404.1520.  The claimant bears the burden of persuasion through step four, and, at step five, the burden shifts to the Commissioner.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

"The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision."  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings).  The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence.  *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)).  Substantial evidence is "more than a scintilla, *i.e.*, evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion."  *Foote*, 67 F.3d at 1560 (internal citations omitted); *see also Dyer v. Barnhart*, 395

F.3d 1206, 1210 (11th Cir. 2005) (finding that "[s]ubstantial evidence is something more than a mere scintilla, but less than a preponderance") (internal citation omitted).   The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).

Accordingly, where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).

## IV.   Analysis

### A. *Whether the ALJ improperly substituted his opinion for that of the medical experts in assessing Plaintiff's mental RFC*

Plaintiff first argues that the ALJ improperly substituted his opinion for those of medical advisors and "arrived at his own conclusion as to [Plaintiff's] mental residual functional capacity."[3]  Doc. 24 at 6.  Plaintiff specifically claims that the ALJ

---

[3] The Commissioner notes, accurately, that "Plaintiff fails to specifically challenge the ALJ's finding that his mental impairments were not severe at step two of the sequential evaluation and instead appears to argue that [the consultative examiner's] report indicated [Plaintiff] had non-exertional limitations that should have been incorporated into the ALJ's RFC finding."  Doc. 25 at 7.  As noted, any issue not raised by Plaintiff in the opening brief is deemed abandoned. *Access Now*, 385 F.3d at 1330.  Accordingly, the Court will address only Plaintiff's RFC arguments.  Nonetheless, the ALJ found at least one severe impairment at step two and continued with the evaluation process, as he was required to do.  Tr. 14.  This circuit holds that the ALJ's finding "of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement of step two." *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987).

erred in disregarding "uncontradicted opinions" of consultative examiner David Rawlings, Ph.D., and by according little weight to the opinions of two state agency consultants. *Id.* at 5-7. The Commissioner states, however, that the ALJ provided substantial evidence to support a finding that Plaintiff was not disabled, and the ALJ properly performed his regulatory role in determining Plaintiff's RFC based on all the evidence in the record. Doc. 25 at 4-5.

The RFC is the most that a claimant can do despite his limitations. *See* 20 C.F.R. § 404.1545(a); *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). At the hearing level, the ALJ has the responsibility of assessing a claimant's RFC. *See* 20 C.F.R. § 404.1546(c). The ALJ is required to assess a claimant's RFC based on all of the relevant evidence in the record, including any medical history, daily activities, lay evidence and medical source statements. 20 C.F.R. § 404.1545(a). The claimant's age, education, and work experience are considered in determining his RFC and whether he can return to his past relevant work, *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1520(f)); and the RFC assessment is based upon all relevant evidence of a claimant's ability to do work despite his impairments. *Phillips*, 357 F.3d at 1238; *Lewis*, 125 F.3d at 1440 (citing 20 C.F.R. § 404.1545(a)).

When determining how much weight to afford a medical opinion, the ALJ considers whether there is an examining or treatment relationship and the nature and extent thereof; whether the source offers relevant medical evidence to support the opinion; consistency with the record as a whole; the specialization of the source,

if any; and any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(1)-(6). Relevant evidence includes medical assessments, medical reports, and descriptions and observations of a claimant's limitations by the claimant and others. *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). Findings of fact made by state agency medical and psychological consultants as to the nature and severity of a claimant's impairments must be treated as expert opinion evidence of nonexamining sources by the ALJ, but the ultimate opinions as to whether a claimant is disabled, the severity of a claimant's impairments, the claimant's RFC and the application of vocational factors are exclusively reserved to the Commissioner. SSR 96-6p; 20 C.F.R. § 404.1527(d)(1)-(2). Unless a treating source's opinion is given controlling weight, the ALJ must explain the weight given to the opinions of other consultants, doctors or medical specialists. 20 C.F.R. § 404.1527(e)(2)(ii); *Vuxta v. Comm'r of Soc. Sec.*, 194 F. App'x 874, 877 (11th Cir. 2006).

The Court finds the ALJ properly considered the medical opinions and relevant evidence in this case in determining Plaintiff's mental RFC. The ALJ found that Plaintiff's affective disorder and possible anxiety disorder were nonsevere, stating Plaintiff's "medically determinable mental impairments of affective disorder and possible anxiety disorder" did not cause more than minimal limitation on Plaintiff's ability to perform basic mental work activities. . . ." Tr. 14-15. In making this determination, the ALJ specifically considered the "paragraph B" criteria[4] and found

---

[4] In order to evaluate the severity of a mental impairment, the Commissioner's regulations require the application of a "special technique" or so-called "paragraph B" criteria, which the ALJ applied in this case. 20 C.F.R. § 404.1520a; *see* Tr. 16. Under the special technique, the ALJ will rate the degree of functional limitation in four broad functional areas: activities of

that Plaintiff's mental impairments would cause only mild limitation in activities of daily living, social functioning, and concentration, persistence or pace, and no episodes of decompensation. Tr. 16. In making this finding, the ALJ considered Plaintiff's medical records from psychiatrist Ronny Valenzuela, M.D., a consultative examination from David B. Rawlings, Ph.D., and records from state agency psychological consultants, Thomas L. Clark, Ph.D., and Heather J. Hernandez, Ph.D. Tr. 15. Contrary to Plaintiff's assertions, the ALJ properly accorded these latter two opinions little weight, as they were not well supported by the medical evidence as a whole. *Id.* The ALJ observed that Plaintiff has received little to no mental health treatment, and his mental limitations reveal no more than mild restrictions. *Id.*

The ALJ first discussed Plaintiff's only record of mental health treatment – on May 18, 2010 – when he was brought to the David Lawrence Center under the Baker Act[5] by a police officer after Plaintiff argued with his son and ran his car into a tree. Tr. 15, 318. Plaintiff denied any prior suicide attempts and any suicidal or homicidal ideations. Tr. 318. Rather, Plaintiff reported that his behavior was due to his

---

daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3). The degree of limitation in the first three areas are rated on a five point scale of none, mild, moderate, marked, and extreme; and the fourth area is rated as none, one or two, three, four or more. 20 C.F.R § 404.1520a(c)(4). Once the degree of limitation in each area is determined, if the degree of limitation in the first three functional areas is none or mild and the fourth area is none, the ALJ generally will find, as he did here, the impairment is not severe, unless the evidence otherwise indicates more than a minimal limitation in ability to do basic work activities. 20 C.F.R. § 404.1520a(d)(1). The ALJ's decision must incorporate findings and conclusions based on the special technique. 20 C.F.R. § 404.1520a(e)(4).

[5] The Florida Mental Health Act of 1971 (Florida Statutes §§ 394.451-394.47891), commonly known as the "Baker Act," allows the involuntary institutionalization and examination of an individual. *See id.*

strained relationship with his son that escalated because of his son's recent negative behavior. *Id.* Plaintiff presented with a sad mood and congruent affect, and his thought process was logical and coherent, with no signs of psychosis. *Id.* He was cooperative and pleasant during the assessment, and was noted to have a "fair image and judgment to current circumstance . . . [and was] oriented x4." *Id.* Upon discharge the following day, psychiatrist Ronny Valenzuela, M.D., evaluated Plaintiff and reported that Plaintiff's mood was better, there was no evidence of anxiety or psychosis, he had good attention and concentration, and he had no memory problems. Tr. 322-23. His orientation was 10 out of 10. Tr. 322. Plaintiff admitted that the previous day he was angry and frustrated, "but he strongly denie[d] suicidal or homicidal ideation, intent or plan." *Id.* Further, Plaintiff requested to be discharged to his family. Tr. 323. Dr. Valenzuela's final diagnosis was adjustment disorder with mixed emotional features. *Id.*

Next, the ALJ noted that the remainder of the record indicates no other support for mental health treatment. Tr. 15. Because of the lack of medical records, Plaintiff underwent a psychological consultative examination with David B. Rawlings, Ph.D., on March 4, 2011. Tr. 329. At this consultative examination, Plaintiff reported his past mental health treatment included marital counseling two or three times a week and his admission to the David Lawrence Center about six to eight months before. Tr. 330. Plaintiff reported worsening memory problems; however, Dr. Rawlings found remote, autobiographical information was intact for Plaintiff's name, age, date or birth, address, phone and Social Security numbers. *Id.*

Dr. Rawlings noted that rapport with Plaintiff was easily established, and Plaintiff's behavior suggested full cooperation.  Tr. 331.  Although Plaintiff's mood and affect were sullen, flat and depressed, Dr. Rawlings noted that he did not appear to be guarded, defensive, paranoid, suspicious, or anxious.  *Id.*  Plaintiff's speech was coherent, and he did not have any obvious difficulties in conversational speech.  *Id.* There were no overt pain behaviors and no other indications of abnormal thought content.  *Id.*

Dr. Rawlings administered the Folstein MMSE,[6] and Plaintiff scored 28 out of 30 correct with two or three words recalled at five minutes, an intact performance, typical of individuals of similar age and education.  Tr. 332.  Dr. Rawlings also administered the Beck Depression Inventory II, which suggested severe levels of symptoms of depression and moderate levels of symptoms of anxiety.  *Id.*  Plaintiff ultimately was diagnosed with major depression, possible anxiety disorder, hypoactive sexual desire disorder, and sleep disturbance.  *Id.*  Dr. Rawlings concluded that if Plaintiff were granted benefits, he appeared capable of managing his funds without assistance.  Tr. 333.

Finally, the ALJ discussed the opinions of the state agency psychological consultants Dr. Clark and Dr. Hernandez.  Tr. 15.  The consultants completed

---

[6] "The Mini Mental State Examination (MMSE) is a tool that can be used to systematically and thoroughly assess mental status. It is an 11-question measure that tests five areas of cognitive function: orientation, registration, attention and calculation, recall, and language." Lenore Kurlowicz, Ph.D, RN, CS and Meredith Wallace, Ph.D, RN, MSN, *The Mini Mental State Examination (MMSE)*, Try this: Best Practices in Nursing Care to Older Adults (The Hartford Institute for Geriatric Nursing, New York, New York), January 1999. https://www.mountsinai.on.ca/care/psych/on-call-resources/on-call.../mmse.pdf.

Psychiatric Review Technique (PRT) and Mental RFC forms. Tr. 334-69. They concluded that Plaintiff had affective and anxiety disorders. Tr. 338, 341, 343, 352, 355, 357. Specifically, Dr. Clark concluded Plaintiff had mild restriction in activities of daily living; mild difficulties in social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation. Tr. 348. Dr. Hernandez assessed moderate limitations in both maintaining social functioning and maintaining concentration, persistence, or pace. Tr. 362. As for the RFC assessments, Dr. Clark concluded Plaintiff could understand, retain, and carry out simple instructions; consistently and usefully perform routine tasks on a sustained basis with minimal (normal) supervision; cooperate effectively with the public and co-workers in completing simple tasks and transactions; and adjust to mental demands of most new task settings. Tr. 336. Dr. Hernandez concluded in her RFC that although Plaintiff had moderate limitations with concentration, persistence, or pace and social functioning, he was mentally capable of sustaining goal-directed activity in a routine setting. Tr. 368. She went on to state that Plaintiff "may have more success in environments with limited social contact." *Id.*

The ALJ properly considered the opinions of the state agency consultants Dr. Clark and Dr. Hernandez and assigned them little weight because they were not well supported by the medical evidence as a whole, including the mental status examinations and test results, which showed no more than mild restrictions. Tr. 15. The ALJ also properly considered the consultative opinion of Dr. Rawlings, which provides substantial evidence to support the ALJ's finding that Plaintiff's mental

impairments were not severe. *Id.* The ALJ discussed Dr. Rawlings' findings that Plaintiff easily established rapport, he could interact appropriately with others, he did not appear guarded, defensive, paranoid, suspicious or anxious, and his speech was generally coherent. Tr. 15, 331. Plaintiff's MMSE score of 28 out of 30 – an intact performance for persons of similar age and education – further supports the ALJ's finding of only mild limitations in Plaintiff's concentration and memory.

Furthermore, as noted by the Commissioner, Plaintiff has failed to show how Dr. Rawlings' opinion conflicts with the ALJ's finding concerning the severity of his mental impairments and their effect on Plaintiff's work-related functional limitations. Doc. 25 at 7. As noted, Plaintiff did not challenge the ALJ's finding at step two as to the severity of his mental impairments. Plaintiff's suggestion that Dr. Rawlings' diagnoses should direct a finding of more functional limitations on Plaintiff's ability to work (Doc. 24 at 5-6) is not persuasive, as there is no such evidence here.[7] Instead, substantial evidence supports the ALJ's finding that Plaintiff's depression was not severe and did not affect his ability to work beyond the limitations in the RFC. *See Reynolds v. Comm'r of Soc. Sec.*, 457 F. App'x 850, 852 (11th Cir. 2012) (holding that because plaintiff presented no medical evidence or testimony documenting the functional limitations that her diagnosed depression

---

[7] The Court also finds unpersuasive Plaintiff's suggestion that his estimated global assessment of functioning ("GAF") score of 51 by Dr. Rawlings was "indicative of moderate symptomatology." Doc. 24 at 6, citing Tr. 333. As noted by the Commissioner, a GAF score is only a snapshot in time regarding an individual's symptoms and may have little or no bearing on his ability to work in terms of his functional limitations. Doc. 25 at 9, citing DSM-IV at 32-34; *Ward v. Astrue*, No. 3:00-cv-1137-J-HTS, 2008 WL 1994978 at *3 (M.D. Fla. May 8, 2008) ("an opinion concerning GAF, even if required to be accepted as valid, would not translate into a specific finding in regard to functional limitations").

caused her, substantial evidence supported the ALJ's finding that plaintiff's depression was not severe).

The Court simply does not find the ALJ substituted his judgment for that of the medical consultants. It is the ALJ's duty to weigh and resolve conflicts in the evidence, and he did so here. *See Richardson*, 402 U.S. at 399. The ALJ also properly explained the weight given to the consultative opinions, as he was required to do. *See* 20 C.F.R. § 404.1527(e)(2)(ii); *Vuxta*, 194 F. App'x at 877. The ultimate opinions as to whether a claimant is disabled, the severity of a claimant's impairments, the claimant's RFC and the application of vocational factors are exclusively reserved to the Commissioner. SSR 96-6p; 20 C.F.R. § 404.1527(d)(1)-(2).

Plaintiff's final argument is that if the ALJ had reservations about accepting the opinions of the state agency consultants, he should have ordered an updated psychological evaluation or ordered a medical advisor to appear at the hearing. Doc. 24 at 6. Plaintiff is correct that the ALJ has a duty to develop the record fully and fairly. *Graham v. Apfel,* 129 F.3d 1420, 1422-23 (11th Cir. 1997). The ALJ, however, is not required to order a consultative examination or additional medial evidence where the record contains sufficient evidence to render a decision. *See Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999) (ALJ was not obligated to seek additional medical testimony because evidence in record was sufficient to determine whether claimant was disabled); *see also Holladay v. Bowen*, 848 F.2d 1206, 1210 (11thCir. 1988) (ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to render a decision). Here, as

discussed above, the ALJ considered the opinion of consultative examiner, Dr. Rawlings, which supports the ALJ's decision, and those of two other consultative examiners for which the ALJ gave little weight.  The evidence as a whole was sufficient for the ALJ to reach a determination, and thus it was unnecessary for the ALJ to order another consultative examination or call a medical expert at the hearing.

Plaintiff has failed to provide any additional evidence to support his position that his mental limitations are more severe and affect his ability to perform basic work.  "The claimant is responsible for providing medical evidence demonstrating an impairment and how severe the impairment is during the relevant time period." *Castle v. Colvin*, 557 F. App'x 849, 852 (11th Cir. 2014) (citing 20 C.F.R. § 404.1512(c)); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) ("[T]he claimant bears the burden of proving he is disabled, and, consequently, he is responsible for producing evidence in support of his claim.").

Accordingly, the Court finds that based on the evidence of record, the ALJ did not substitute his opinion for those of the medical experts, and he properly discounted the opinions of Dr. Hernandez and Dr. Clark.  Moreover, the ALJ clearly articulated his reasons for the weight given to the consultants.  The decision of the ALJ is supported by substantial evidence.

> B. *Whether the ALJ erred when he applied the grids to determine that Plaintiff could perform work that exists in significant numbers in the national economy*

The ALJ determined that Plaintiff had the residual functional capacity to perform the full range of sedentary work and used the Medical-Vocational Guidelines,

also known as the "grids," to support a finding that Plaintiff was not disabled.  Tr. 22-23.  The ALJ found that, considering Plaintiff's age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  *Id.*  Plaintiff argues that the ALJ erred in utilizing the grids because Plaintiff has moderate limitations in concentration, which significantly affected Plaintiff's ability to perform work-related activities.  Doc. 24 at 9.   In addition, Plaintiff contends that the medical records indicate Plaintiff's use of a cane to prevent from falling should have been taken into consideration by the ALJ.  *Id.* Therefore, Plaintiff argues that because certain non-exertional limitations[8] exist, a vocational expert was necessary to support the ALJ's conclusion that those nonexertional impairments do not limit basic work skills.  Doc. 24 at 7.   Because the ALJ found substantial evidence to support a finding that Plaintiff's mental impairments cause no more than minimal limitation in Plaintiff's ability to perform basic mental work activities (Tr. 15) and that Plaintiff is capable of performing work at the full range of sedentary exertional level (Tr. 22), the Court concludes that the ALJ properly relied upon the grids in determining that Plaintiff was not disabled.

In a disability determination, once a claimant proves that he can no longer perform his past relevant work, "the burden shifts to the Commissioner to show the existence of other jobs in the national economy which, given the claimant's

---

[8] "In the disability programs, a nonexertional impairment is one which is medically determinable and causes a nonexertional limitation of function or an environmental restriction.  Nonexertional impairments may or may not significantly narrow the range of work a person can do."  SSR 83-14, 1983 WL 31254 at *1 (S.S.A. 1983).  Nonexertional limitations affect a claimant's ability to meet the demands of jobs, other than strength demands.  20 C.F.R. § 404.1569a(c).

Case 2:15-cv-00245-CM   Document 26   Filed 07/14/16   Page 16 of 20 PageID 758

impairments, the claimant can perform." *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999). One way for the Commissioner to carry this burden is through an application of the Medical-Vocational Guidelines, also known as the "grids." *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2. When a claimant cannot perform substantially all of the exertional demands of a given work level and/or has non-exertional limitations, the grids are used as a framework for decision making unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations. *See Wolfe v. Chater*, 86 F.3d 1072, 1077 (11th Cir. 1996).

"'[E]xclusive reliance on the grids is not appropriate *either* when [the] claimant is unable to perform a full range of work at a given residual functional level or when a claimant has non-exertional impairments that significantly limit basic work skills.'" *Phillips,* 357 F.3d at 1242, quoting *Francis v. Heckler*, 749 F.2d 1562, 1566 (11th Cir. 1985) (emphasis added). It is only when either condition exists that the ALJ must consult a vocational expert. *Id.* "The first condition that requires the ALJ to consult a vocational expert is when the claimant's *exertional* limitations prevent the claimant from performing a full range of employment." *Id.* (emphases in original). The Eleventh Circuit has interpreted a "full range of employment" as being able to do "unlimited" types of work at the given exertional level. *Id.*, quoting *Ferguson v. Schweiker*, 641 F.2d 243, 248 (5th Cir. 1981). The second condition that requires consultation of a vocational expert is when the claimant's nonexertional impairments significantly limit basic work skills. *Phillips*, 357 F.3d at 1243 (internal citations omitted). The Eleventh Circuit has interpreted "significantly limit basic work skills"

-16-

as limitations that prohibit a claimant from performing "a *wide* range" of work at a given work level. *Id.*, citing *Foote*, 67 F.3d at 1559 (emphasis in original). The ALJ must determine "whether the nonexertional limitations are severe enough to preclude a wide range of employment at the given work capacity level." *Foote*, 67 F.3d at 1559 (internal quotation marks and citations omitted).

"It is only when the claimant can clearly do unlimited types of light work that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy." *Allen v. Sullivan*, 880 F.2d 1200, 1202 (11th Cir. 1989); *see also Phillips*, 357 F.3d at 1242. Accordingly, "[w]hen a claimant cannot perform a full range of work at a given level of exertion or has non-exertional impairments that significantly limit basic work skills, the preferred method of demonstrating that a claimant can perform other jobs is through the testimony of a VE." *Smith*, 272 F. App'x at 799-800 (citing *Jones*, 190 F.3d at 1229). If a claimant's non-exertional limitations do not significantly limit his basic work skills at the sedentary work level, then the ALJ may rely on the grids to determine if the claimant is disabled. *Phillips*, 357 F.3d at 1243. Further, if non-exertional impairments are minor or are found to be not credible, however, exclusive reliance on the grids is appropriate. *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 826 (11th Cir. 2010).

Here, the ALJ found that Plaintiff had the residual functional capacity to perform a full range of work at the sedentary exertional level. Tr. 22. As noted, the ALJ found that Plaintiff's "medically determinable mental impairments of affective

disorder and possible anxiety order secondary to a medical condition, considered singly and in combination [did] not "cause more than minimal limitation in the [Plaintiff's] ability to perform basic mental work activities and are therefore nonsevere." Tr. 14-15.  In making this determination, the ALJ considered the four functional areas set out in the disability regulations for evaluating mental disorders and found that with regard to the first functional area of activities of daily living, Plaintiff had no limitation and that as to the second and third areas of social functioning and concentration, persistence or pace, Plaintiff had "mild limitation." Tr. 16.  As to the final area of episodes of decompensation, the ALJ found that Plaintiff had experienced no episodes of decompensation that had been of extended duration. *Id.*

Further, the medical evidence in the record indicates that Plaintiff did not appear to have any concentration issues.  Dr. Rawlings observed that Plaintiff had no obvious attention, concentration, or memory problems (Tr. 15, 348, 362), but rather he noted that Plaintiff's mental status tests were consistent with individuals of similar age and education.  Tr. 16, 332.  As to Plaintiff's second argument that the ALJ's reliance on the grids was improper because Plaintiff needs to use a cane to prevent him from falling, Plaintiff only cites to his statement to Dr. Kibria that Dr. Matthew Black had prescribed a cane.  Doc. 24 at 9.  The record, however merely shows that Dr. Black prescribed a knee brace for Plaintiff to wear.  Tr. 452.  As to this point, the ALJ noted that Plaintiff's statements regarding the severity and limiting

effects of his symptoms were not entirely credible.[9]   Tr. 18.   The ALJ considered

Plaintiff's visit to Omid Rabbani, M.D. in May 2009, who observed that Plaintiff

displayed qualities of malingering given his history and examination findings. Tr. 21,

585.   Further, Dr. Rabbani noted that Plaintiff's gait and station were normal, he

could walk on his heels and toes, and he had no functional limitations or restrictions.

Tr. 585.   Due to the lack of medical evidence, the ALJ appropriately did not

incorporate the need for use of a cane into his RFC finding.

Because Plaintiff could perform a full range of sedentary work, the ALJ was

entitled to rely upon the grids to determine that there were a significant number of

jobs in the national economy that Plaintiff could perform.   *Clifton v. Astrue*, 298 F.

App'x 855, 856 (11th Cir. 2008) (ALJ properly relied on grids where claimant's mental

limitations did not preclude full range of light work); *Perry v. Astrue*, 280 F. App'x

887, 894, 896 (11th Cir. 2008) (VE testimony was not required where ALJ determined

that plaintiff did not have nonexertional impairments that significantly limited his

ability work, and substantial evidence supported the ALJ's decision); *Werner v.

Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011) (ALJ's determination that

plaintiffs nonexertional impairments did not significantly limit plaintiff's ability to

work was supported by substantial evidence, and the ALJ therefore was free to rely

on grids rather than VE); *Johnson v. Barnhart*, No. 02-16464, 2003 WL 22595220, at

*6 (11th Cir. 2003) (ALJ could rely on grids and was not required to consult VE where

the plaintiff's nonexertional limitations did not preclude wide range of sedentary

---

[9] Plaintiff does not challenge the ALJ's finding on credibility.   Doc. 24 at 5-9.

work).  Accordingly, the Court finds that the ALJ properly relied upon the grids in determining that Plaintiff was not disabled.

## V.   Conclusion

Upon review of the record, the undersigned concludes that the ALJ applied the proper legal standards, and his determination that Plaintiff is not disabled is supported by substantial evidence.  Where, as here, the Commissioner's decision is supported by substantial evidence, the Court must affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the preponderance of the evidence is against the Commissioner's decision.  *Edwards*, 937 F.2d at 584 n.3; *Barnes*, 932 F.2d at 1358.

ACCORDINGLY, it is hereby

**ORDERED:**

1.      The decision of the Commissioner is **AFFIRMED**.

2.      The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) in favor of the Commissioner, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on this 14th day of July, 2016.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record